J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

Attorneys for Defendant
CUREBIT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, a Texas limited liability company, and LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>CUREBIT, INC.,<br><br>Defendant. | Case No.: 5:18-cv-00156-BLF<br><br>**DEFENDANT CUREBIT, INC.'S REPLY IN SUPPORT OF MOTION TO STAY**<br><br>Date:   April 27, 2018<br>Time:   9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:  Honorable Beth Labson Freeman<br>Trial Date:  None |

I.     **PERSONALWEB ACCUSES AMAZON TECHNOLOGY.**

PersonalWeb admits that it sued companies that use Amazon S3 and its infringement claims depend at least in part on that very use. (*See Amazon.com, Inc., et al. v. PersonalWeb Techs., et al.*, No. 18-cv-767 ("*Amazon*"), Dkt. No. 37 at 7 (N.D. Cal. Mar. 23, 2018); Opp. at 2.) Accordingly, Amazon's claims seeking declarations that PersonalWeb's infringement claims are barred and its patents are not infringed by S3 or any other Amazon technology will resolve, at a minimum, the major issues in the customer cases. A stay must issue for this reason alone. *See In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014).

Amazon's declaratory judgment action will resolve not only the major issues, but *all* of them. PersonalWeb alleges that the "unique identifier"[1] of every asserted claim is an ETag generated by Amazon S3. (*See* Dkt. No. 1 at ¶¶ 22–23; *see also* Shenoy Decl.[2] at ¶¶ 54–55.) For each claim, it accuses the generation of ETags by S3 upon "upload" of objects to S3. (*See, e.g.*, Dkt. No. 1 at ¶ 64; Shenoy Decl. at ¶¶ 56, 58.) PersonalWeb maps claim limitations requiring "requesting the particular data item by sending the data identifier" to "Conditional GET" requests using "If-None-Match" headers—a feature that exclusively uses ETags generated by S3. (*See* Dkt. No. 1 at ¶ 39; *see also, e.g., id.* at ¶¶ 41–42, 49, 57–58, 67–68, 70, 78; Shenoy Decl. at ¶¶ 57–62.) In response to a Conditional GET request, the "responding upstream server[]" compares the ETag it has for the requested object with the ETag value it received with the request from the browser and sends the appropriate message. (*See, e.g.*, Dkt. No. 1 at ¶ 39; Shenoy Decl. at ¶¶ 32, 55–66.) Indeed, the *only* server that can carry out this step is Amazon S3, because it is the only server that PersonalWeb alleges generates and stores ETags corresponding to uploaded objects. In order to prove its claims, PersonalWeb will have to show that Amazon S3 meets these claim limitations. (*See* Shenoy Decl. at ¶ 66.) If Amazon obtains a declaration that PersonalWeb's claims against its technology are

---

[1] The claims alternatively recite "data item identifier," "data identifier," "True Name," and "substantially unique identifier." These terms have been construed to have the same meaning. *PersonalWeb Techs., LLC v. Amazon.com*, No. 11-cv-655, Dkt. No. 140 at 22 (E.D. Tex. Aug. 5, 2013).

[2] The Shenoy Declaration, attached hereto, submitted by Amazon in connection with its reply in support of its motion to enjoin (*Amazon*, Dkt. No. 42-1), provides technological background helpful in evaluating the arguments PersonalWeb makes here.

FENWICK & WEST LLP
ATTORNEYS AT LAW

barred by virtue of its prior litigation campaign against Amazon, each and every PersonalWeb customer suit will be resolved in its entirety. And if Amazon obtains a declaration that its technology does not infringe the asserted patents, all PersonalWeb customer suits will be resolved.

It is irrelevant that the complaints also mention Ruby on Rails, because the only infringement claims pled depend on use of Amazon S3.[3] Indeed, the two times PersonalWeb mentions Ruby on Rails in its allegations for the exemplary claims, it accuses the use of Ruby on Rails in conjunction with "the Amazon S3 hosting system."[4] (Dkt. No. 1 at ¶¶ 56, 74.) And the fact that PersonalWeb's complaint describes the operation of "intermediate cache servers" and the "HTTP web protocol" also does not change the fact that the allegations depend on S3. (Opp. at 3.) First, the complaint alleges that "intermediate cache servers" make—not respond to—Conditional GET requests; it is *S3* that responds to these requests. (*Compare* Opp. at 3 to Dkt. No. 1 at ¶ 39.) And S3's response to a Conditional GET request requires the use of content-based ETags generated by S3.[5] (*See, e.g.*, Dkt. No. 1 at ¶¶ 19, 22–23; Shenoy Decl. at ¶¶ 54–55.) Second, Amazon determines whether to employ content-based ETags; the HTTP specification (*i.e.*, the document defining the HTTP protocol) does not require them. (Shenoy Decl. at ¶ 30.)

PersonalWeb's claims rise and fall with Amazon's S3 technology: if the use of S3-generated ETags generated by S3 and their alleged use by Amazon's customers do not map to the asserted claims, PersonalWeb's claims against Curebit cannot survive.

## II. THIS SUIT MUST BE STAYED UNDER THE CUSTOMER SUIT DOCTRINE.

Each of PersonalWeb's arguments against the application of the customer suit doctrine fails as a matter of law. It is wrong that the customer suit doctrine applies only to "resellers" of the technology, and not to end users. (Opp. at 1, 5). The Federal Circuit has already emphatically

---

[3] In practice, the allegations about Ruby on Rails also relate to Amazon's technology: customers integrate Ruby on Rails applications with S3 by using Amazon's AWS SDK for Ruby; nearly all requests made to S3 via Ruby come from the AWS SDK. (*See Amazon*, Dkt. No. 42 at 3–4.)

[4] The complaint also alleges that a Ruby on Rails "fingerprint" could be a unique identifier, but contains no infringement theory based on this allegation. Instead, every claim returns to the S3 ETag as the claimed identifier. (Dkt. No. 1 at ¶¶ 38, 48, 76; *see also* Shenoy Decl. at ¶¶ 55–57.)

[5] PersonalWeb admits that it accused the same feature in its prior case against Amazon (*see* Dkt. No. 27 at 7), belying its suggestion that the Conditional GET feature is unrelated to Amazon technology.

rejected this argument. *In re Google*, 588 F. App'x at 990 (directing stay of cases against phone manufacturers even though they were not "mere resellers" and modified the accused platform).[6]

It is wrong that the customer suit doctrine does not apply when a patentee asserts infringement through the customer's practice of a claimed method. In *Google*, the Federal Circuit stayed customer suits involving method claims.[7] *See, e.g.*, *Rockstar Consortium US LP v. ASUStek Computer, Inc.*, No. 2:13-CV-00894-JRG, Dkt. No. 22 (E.D. Tex. Feb. 28, 2014) (underlying complaint in *Google* case showing asserted method claims).

It is wrong that the customer suit doctrine does not apply if Curebit does not agree to be bound by the results of the Amazon case. Such an agreement is unnecessary here because Amazon has agreed to indemnify Curebit against PersonalWeb's claims. (*Amazon*, Dkt. No. 36 at ¶¶ 8, 33 (Mar. 23, 2018)); *Select Retrieval, LLC*, 2013 WL 1099754 at *5 (manufacturer's agreement to indemnify its customers "obviates" any need of an agreement by the customers "to be bound by" the manufacturer's suit); *see also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming district court injunction of customer suits in absence of agreement to be bound).

And it is wrong that Amazon's declaratory judgment action will not fully resolve this case. PersonalWeb has not articulated or pled any complete theory of infringement that does not rise and fall with the operation of Amazon S3. (*See, e.g.*, *Amazon*, Dkt. No. 36 at ¶¶ 54, 62, 70, 78, 86.)

---

[6] None of PersonalWeb's attempts to distinguish *Google* justifies a different conclusion. It argues that in *Google*, the patentee conceded that the declaratory judgment action and the customer suits involved substantially the same controversy, whereas PersonalWeb has made no such concession. (Opp. at 6–7.) This argument is belied by the fact that PersonalWeb admitted that there is a "significant commonality of fact and legal issues" between Amazon's case and its customer suits. *In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC, Patent Litig.*, MDL No. 2834, Dkt. No. 1-1 at 2 (J.P.M.L. filed Feb. 27, 2018). PersonalWeb denies that it has provided "'nearly identical infringement contentions' relying 'almost exclusively' on" Amazon technology. (Opp. at 7.) But it has sued Amazon's customers accusing the very same functionality—use of S3-generated ETags and conditional GET requests—it accused in the prior Amazon case. (*See* Shenoy Decl. at ¶ 67.)

[7] Courts routinely stay claims against customers involving method claims based on use of software pending resolution of a declaratory judgment action between patentees and software developers. *See, e.g.*, *Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 12-cv-00003, 2013 WL 1099754, at *5 (D. Me. Mar. 15, 2013). This makes sense where, as here, the allegations point to the inner workings of the supplier's technology, and the use of that technology by customers does not alter the infringement analysis.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

But, more importantly even if there were some issue in the customer cases that Amazon's declaratory judgment action does not completely resolve, Federal Circuit law still mandates a stay. The question is whether the manufacturer's suit will resolve major issues and save litigation resources; it need not resolve "every conceivable issue" or every claim in the customer suits. *Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12–088–RGA, 2012 WL 2803695, at *4 (D. Del. July 10, 2012) (ordering a stay over the same objections offered by PersonalWeb).

The Federal Circuit cases PersonalWeb relies on do not hold otherwise. In *Kahn v GMC*, the Federal Circuit did decline to apply the customer suit doctrine where the manufacturer's declaratory judgment action would not resolve all claims against automakers, including specific non-patent tort claims asserted by the patentee against General Motors. 889 F.2d 1078, 1080–81 (Fed. Cir. 1989). But the Federal Circuit later repudiated this holding as inconsistent with the intervening opinion in *Katz*. *Spread Spectrum Screening LLC v. Eastman Kodak Co.* 657 F.3d 1349, 1358 (Fed. Cir. 2011). In *Tegic Communications Corp. v. Board of Regents of the University of Texas System*, the Federal Circuit declined to stay claims brought by the University of Texas against customers of Tegic, because, among other things, Tegic could intervene in a *single* Texas case to defend its customers and because Tegic was not the sole provider of the accused software.[8] 458 F.3d 1335, 1342–45 (Fed. Cir. 2006). Here, PersonalWeb filed more than 50 cases in districts across the country; intervention in a single case is not an option. And PersonalWeb has not accused the technology of any other web hosting service—just S3.[9]

---

[8] In denying the stay, the Federal Circuit in *Tegic* also relied on the fact that the University had not waived its Eleventh Amendment immunity and had previously covenanted not to sue Tegic. *Tegic*, 458 F.3d at 1344. No such issues prevent resolution of the Amazon-PersonalWeb dispute.

[9] None of the other district court cases PersonalWeb cites overcome the Federal Circuit's mandate. In *JoeScan, Inc. v. LMI Technologies, Inc.*, the court did not consider the Federal Circuit's opinion in *Katz*, and relied on the fact that the manufacturer could intervene in the single customer case, which Amazon cannot reasonably do here. No. C07-5323, 2007 WL 2572296, at *3 (W.D. Wash. Sep. 5, 2007). Further, in both *JoeScan* and *Zemel Brothers v. Dewey Electronics Corp.*, the courts relied on the fact that only the customer could directly infringe the asserted method claims. *Id.* at *2; *Zemel Bros. v. Dewey Elecs. Corp.*, 218 U.S.P.Q. 722 (N.D.N.Y. 1982). That is not the case here: PersonalWeb already accused Amazon of directly infringing similar claims based on use of the same feature accused in this case.

### III. AMAZON HAS STANDING TO ASSERT ITS DECLARATORY JUDGMENT CLAIMS.

Contrary to PersonalWeb's assertion, Amazon has standing to assert its declaratory judgment claims based on (1) Amazon's indemnification obligations to its customers; and (2) PersonalWeb's implied assertion of indirect infringement by Amazon. (Opp. at 1.)

Though Amazon's declaratory judgment action as originally filed adequately pled both standing and subject matter jurisdiction, Amazon amended its complaint—expressly to resolve PersonalWeb's threatened motion to dismiss—to plead an independent basis for jurisdiction. The AWS Customer Agreement has for all relevant time periods been publicly available on the Amazon website and gave rise to Amazon's obligation to indemnify Curebit. (*Amazon*, Dkt. No. 36 at ¶¶ 32–33.) Amazon's indemnification obligation arose before the complaint was filed, and is sufficient in and of itself to establish declaratory judgment jurisdiction and standing. *See Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).

Amazon also has established jurisdiction and standing by showing "a reasonable potential" that claims for indirect infringement "could be brought" against it—*not* based on the mere fact that PersonalWeb sued its customers on S3, but based on the specific infringement theories alleged. *See Amazon.com, Inc. v. Straight Path IP Grp. Inc.*, No. 14-cv-04561, 2015 WL 3486494, at *4 (N.D. Cal. May 28, 2015) (quoting *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904–905 (Fed. Cir. 2014)). Here, PersonalWeb accuses Amazon technology—S3 and ETags generated and provided to customers by S3—of meeting each limitation of the asserted claims, claims infringement based on customers' use of that technology, and accuses the same Conditional GET feature it accused against Amazon. (Shenoy Decl. at ¶¶ 55–66.) Amazon provides its customers extensive support in using S3 for their websites, including assisting them in integrated Ruby on Rails applications with S3. (*See Amazon*, Dkt. No. 42 at 3–4.) The theories alleged give rise to implied indirect infringement claims against Amazon. *See Straight Path IP*, 2015 WL 3486494, at *6. Under either ground, Amazon has standing to assert its declaratory judgment claims and the Court has subject matter jurisdiction over these claims. Thus, the Court can and should stay this case pending resolution of Amazon's declaratory judgment action.

|     |                         |                                                            |
| --- | ----------------------- | ---------------------------------------------------------- |
| 1   |                         | Respectfully submitted,                                    |
| 2   | Dated: April 24, 2018   | FENWICK & WEST LLP                                         |
| 4   |                         | By: */s/ Chieh Tung*                                       |
| 5   |                         |     Chieh Tung                                             |
| 6   |                         |     Attorney for Defendant<br>    CUREBIT, INC.            |